UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FREEDOM MORTGAGE CORP.,

    Appellant,

v.

MATTHEW DAVID DEAN, and
AARON DWAYNE DEAN,

    Appellees.
_____

Case No: 8:22-cv-1469-KKM
Bankruptcy Case No: 8:20-bk-6021-CPM

## ORDER

A debtor's bankruptcy petition halts "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the [bankruptcy] case." 11 U.S.C. § 362(a)(6). This automatic stay operates according to its plain language, barring collection efforts by any creditor of pre-bankruptcy debts but not of post-bankruptcy obligations. The threshold question in this appeal is whether a mortgage statement by a creditor violates the automatic stay even if it disavows any attempt to collect a debt, asserts it is "for informational and compliance purposes only," does not threaten late charges, and directs payment to the bankruptcy trustee if required by the debtor's bankruptcy plan. Although the mortgage statements at issue here included some contradictory language,

they did not rise to a collection effort. The bankruptcy court's conclusion otherwise is reversed and its order imposing sanctions stemming from that ruling is vacated. (Doc. 7-2; Doc. 11-3.)

## I. BACKGROUND

Matthew David Dean and Aaron Dwayne Dean, the Appellees and the debtors in the underlying bankruptcy case, entered a mortgage contract with Roundpoint Mortgage Servicing that required monthly mortgage payments of $2,102.32. (Doc. 7-151 at 4.) After falling behind on these payments, the Deans filed for Chapter 13 relief under § 302 of the bankruptcy code on August 7, 2020. (*Id.* at 3.)

Roundpoint and the Deans successfully completed mortgage modification mediation, and the bankruptcy court approved a trial mortgage modification on October 1, 2020. (*Id.* at 4; Doc. 7-54.) The trial mortgage modification order—which required the Deans to pay $1,927.15 each month during November 2020, December 2020, and January 2021—did not permanently modify the original mortgage contract. (Doc. 7-51; Doc. 7-54.) Instead, if the debtors proved that they could keep up with those modified payments, then the bankruptcy court would enter a permanent mortgage modification order.

After the bankruptcy court ordered the trial mortgage modification, Roundpoint—the original mortgage servicer—transferred the mortgage to Freedom Mortgage Corporation. (Doc. 17 at 8.) Starting in November 2020, Freedom began sending monthly

mortgage statements to the Deans stating that Freedom understood the monthly "amount due" to be $2,102.32, not $1,927.15. (*Id.* at 9–10); see Appendix A. In response to the statements, the Deans' counsel repeatedly contacted Freedom about the inaccuracy of the amount due. (*Id.*) But Freedom refused to change the amount listed on the mortgage statements until July 2021, (Doc. 7–119)—a couple months after the bankruptcy court permanently confirmed the mortgage modification, (Doc. 7-87). As a result, the bankruptcy court ordered Freedom to show cause why the court should not sanction Freedom for violating the automatic stay, (Doc. 7-91), which bars "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the [bankruptcy] case," 11 U.S.C. § 362(a)(6).

Freedom responded that the Truth in Lending Act (TILA), 15 U.S.C. § 1638(f), and Reg Z, 12 C.F.R. § 1026.41, obligated Freedom to send monthly mortgage statements to the Deans listing the amount owed under the contract, even during bankruptcy. (Doc. 7-109 at 12–13.) Freedom also sought safe harbor for the mortgage statements sent to the Deans because Freedom designed the statements based on the Consumer Financial Protection Bureau's Form H-30(F). (Doc. 13 at 34–36;) *see* Appendix B.[1]

---

[1] TILA obligates the CFPB to promulgate a disclosure form that lists the information required by the substantive portions of the statute. *See* 15 U.S.C. § 1638(f)(2). The CFPB designed Model Form H-30(F) as a financial statement to be used by creditors during bankruptcy. 81 Fed. Reg. 72160-01, 72344 (Oct. 19, 2016).

3

On May 18, 2022, the bankruptcy court orally rejected Freedom's arguments and ruled that Freedom violated § 362(a) for two reasons. First, the bankruptcy court concluded that because Freedom's mortgage statements listed $2,102.32 as the amount due, Freedom sought to collect a debt owed based on a pre-bankruptcy mortgage contract. (*See* Doc. 7-151 at 5–6.) Second, the court found that the payment coupon attached at the bottom of the mortgage statements, which included instructions to "detach and return . . . with your payment," constituted an attempt to collect. (*Id.* at 6–13.) The court then memorialized its ruling that Freedom violated the automatic stay and required that Freedom pay all attorney's fees incurred by the mortgage statements and the subsequent motion for sanctions. (Doc. 7-151 at 6–12; Doc. 7-2; Doc. 11-3.) After the Deans' counsel submitted a fee application, the court imposed an award of $15,060.00. (Doc. 11-3 at 2.)

Freedom now appeals the bankruptcy court's orders that concluded Freedom violated the automatic stay and that imposed an award of attorney's fees. (Doc. 7-1; Doc. 11-2.)

## II.  STANDARD OF REVIEW

This appeal raises questions of law and mixed questions of law and fact that are both reviewed *de novo*. *In re Club Assocs.*, 951 F.2d 1223, 1228 (11th Cir. 1992); *In re Cox*, 493 F.3d 1336, 1340 n.9 (11th Cir. 2007) ("Like the district court, we review the

4

bankruptcy court's findings of fact for clear error and the court's conclusions of law and mixed questions of law and fact *de novo*.").

## III. ANALYSIS

On appeal, Freedom primarily contends that TILA, Reg Z, and CFPB commentary allow the monthly mortgage statements to list the "amount due" as the amount owed under the original contract until the bankruptcy court entered a final mortgage modification. (Doc. 13 at 16–34.) Freedom also takes issue with the bankruptcy court's conclusion that the payment coupon attached to the statements rendered the entire statement an attempt to collect. (*Id.* at 24–39.) On that score, Freedom invokes *Chevron* deference, asking this Court to conclude that CFPB's Form H-30(F) was a permissible interpretation of TILA and thus Freedom's own mortgage statement modeled on Form H-30(F) must suffice. The Court agrees that the statements do not constitute attempts to collect; but it does not defer to the CFPB or give special credence to Form H-30(F) in concluding that Freedom's statements do not constitute attempts to collect as prohibited by § 362 of the bankruptcy code. In the light of that ruling, the Court does not address what TILA, Reg Z, and the bankruptcy code allow to be listed as the amount owed on financial statements sent by creditors to debtors in ongoing bankruptcy proceedings.

As an initial matter, the Court does not defer to the CFPB's interpretation of the bankruptcy code's automatic stay provisions as embodied in Form H-30(F) because

5

Congress never charged the CFPB with administering the bankruptcy code. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984) (holding that a Court must defer if it "reviews an agency's construction of the statute which [the agency] *administers*") (emphasis added); *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001) (holding that a Court provides deference to an "agency administering its own statute"). Instead, Congress charged the CFPB with administering part of TILA. *See* 15 U.S.C. § 1638(f). Thus Freedom (and any other mortgage servicer) should not assume that Model Form H-30(F) complies with the bankruptcy code simply because CFPB promulgated it.

Turning to the merits, Freedom's statements do not rise to collection efforts when reviewed as a whole and in context. Neither the parties nor the bankruptcy court cite controlling precedent as to what language renders financial statements attempts "to collect, assess, or recover" a claim against a debtor under § 362(a)(6). This Court similarly cannot locate Eleventh Circuit or Supreme Court precedent addressing this question. But the Eleventh Circuit's recent opinion in *Daniels v. Select Portfolio Servicing, Inc.*, 34 F.4th 1260 (11th Cir. 2022), addressing what constitutes "an attempt to collect a debt" under the Fair Debt Collection Practices Act (FDCPA), provides relevant analysis to apply to the bankruptcy context.

In *Daniels*, a plaintiff sued a mortgage servicer under the FDCPA, 15 U.S.C. §§ 1692 et seq., alleging that the servicer's monthly mortgage statements misstated the

6

principal amount due. *Id.* at 1263. The mortgage servicer argued that the monthly mortgage statements complied with TILA, and that any mortgage statement sent under TILA is exempt from the FDCPA. *Id.* at 1267. The Eleventh Circuit rejected that argument and held that a statement sent in compliance with TILA is nonetheless subject to the FDCPA if the statement is sent "in connection with the collection of a debt." *Id.* at 1274.

"[T]he FDCPA's 'in connection with the collection of a debt' language asks whether the 'challenged conduct is related to debt collection,' i.e., is 'an attempt to collect a debt.'" *Id.* at 1267 (*quoting Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216–17 (11th Cir. 2012)). *Daniels* holds that a creditor's financial statement is "an attempt to collect a debt" if: (1) the statement contains "this is an attempt to collect a debt" language; (2) the statement requests "payment of a certain amount by a certain date;" (3) the statement provides "for a late fee if the payment is not made on time;" and (4) "the history between the parties suggests that the statement is an attempt to collect on a disputed debt." 34 F.4th at 1271. The financial statements in *Daniels* satisfied all four criteria, and the Court held that the statements were subject to the requirements of the FDCPA even though the statements were mandatory under TILA. *Id.* at 1274.

Although the bankruptcy code does not use language identical to that in the FDCPA, it similarly prohibits "any act to collect, assess, or recover a claim" that arose

7

before a debtor petitioned for bankruptcy relief. 11 U.S.C. § 362(a)(6). *Daniels* thus is "highly instructive" on whether Freedom's statements violated the bankruptcy code's automatic stay. *Marinello v. United States*, 138 S. Ct. 1101, 1109 (2018) (holding that precedent based on similar statutory language is "highly instructive" even if it is "not controlling").

Turning to the first *Daniels* factor, Freedom's mortgage statements clearly disavow any attempt to collect a debt: "We are sending this statement to you for informational and compliance purposes only. It is not an attempt to collect a debt against you." Appendix A. The mortgage statement then instructs the debtor "to send your regular monthly mortgage payments to the Trustee" if required by your bankruptcy plan, and "not [to] send your payment to us." *Id.* If that directive causes confusion, the statement informs the recipient to "contact your attorney or the Trustee if you have questions." *Id.* The payment coupon attached to the bottom of the mortgage statements repeats the instruction to send payments to the trustee if required by the bankruptcy plan. Lest the mortgage statements themselves are unwanted, they inform the debtor to "write to us" "[i]f you want to stop receiving statements" and provide the appropriate address to do so. *Id.* All the above fairly implies (and even explicitly states) that collection efforts are not afoot.

Freedom's statements contain two items that might imply something else. First, the existence of the payment coupon itself might lead a debtor to understand that payment

8

should be sent somewhere. *See In re Cousins*, 404 B.R. 281, 287 (Bankr. S.D. Ohio 2009) ("The payment coupon, with a place to write in the amount enclosed and address for sending payments, has no other purpose that the court can conceive except to collect the debt outside of the bankruptcy case, an act prohibited by § 362(a)(6).") But that implication must be tempered by the explicit language above, namely, that Freedom itself is not attempting to collect a debt and any payment should be directed to the bankruptcy trustee as required by the bankruptcy plan. Second, the payment coupon includes the instruction to "detach and return bottom portion with your payment." *Id.* A fair implication is likewise that the debtor should be sending payment. But again, that language must be read in the light of the instructions contained elsewhere in the mortgage statements (twice in fact) as to *whom* to send the payment and that Freedom itself was not attempting to collect a debt.

As for the second and third *Daniels* factors, Freedom's mortgage statements list a "payment date" but do not include any threat of late fees. There is a line under "Past Payment Breakdown" that says, "Late Charges," but the line repeatedly listed "$0" throughout the entire bankruptcy proceeding, even after it was clear that Freedom and the Deans understood the "amount due" differently. (*See* Doc. 7-119.)

Lastly, the fourth *Daniels* factor—requiring courts to consider whether "the history between the parties suggests that the statement is an attempt to collect on a disputed debt," 34 F.4th at 1271—is neutral. Freedom assumed the mortgage from Roundpoint after the

9

bankruptcy court ordered the trial mortgage modification in October 2020. (Doc. 17 at 8.) Freedom never sent mortgage statements to the Deans prior to bankruptcy nor does the record reflect that the parties had other communications preceding the statements. In other words, there is no pre-statement history that informs, one way or another, the purpose of the mortgage statements.

Overall, because Freedom's mortgage statements disavowed any attempt to collect a debt and did not threaten late charges, the mortgage statements were not an "act to collect, assess, or recover a claim against" the Deans. 11 U.S.C. § 362(a)(6); *see also* 34 F.4th at 1271. But Freedom would still be wise to modify its statements in the future without reliance on the CFPB's Model Form H-30(F). *See* Appendix B. That form includes a payment coupon with instructions to make the check payable to the mortgage servicer, *and* a "Late Fee," "charged because [the] full monthly payment [was] not received by" the due date. *See* Appendix B. At best, the payment coupon—with instructions to "detach and return . . . with your payment"—attached to an "informational" financial statement might lead to confusion. *See* Appendix A. And threats of late fees hardly comport with an "informational" only statement. To be sure, if Freedom's statements at issue here included threats of late fees while also calculating the payment amount based only on the original mortgage contract, then this Court may have affirmed the sanction for violating the automatic stay.

10

## IV. CONCLUSION

Accordingly, the bankruptcy court's order concluding that Freedom Mortgage violated 11 U.S.C. § 362(a), (Doc. 7-2), is **REVERSED** and the bankruptcy court's order awarding $15,060.00 to the Appellees, (Doc. 11-3), is **VACATED**. The Clerk is directed to close this case.

**ORDERED** in Tampa, Florida, on January 26, 2023.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge

## APPENDIX A: Freedom Mortgage's Bankruptcy Statement to the Deans



<mark>Case 8:22-cv-01469-KKM Document 22 Filed 01/26/23 Page 13 of 13 PageID 2991</mark>

# APPENDIX B: CFPB Model Form H-30(F)

**Springside Mortgage**
Customer Service: 1-800-555-1234
www.springsidemortgage.com

**Mortgage Statement**
Statement Date: 8/20/2015

Jordan and Dana Smith
4700 Jones Drive
Memphis, TN 38109

| Account Number | 1234567 |
|---|---|
| Payment Date | 9/1/2015 |
| Payment Amount | $3,569.88 |

### Bankruptcy Message

Our records show that you are a debtor in bankruptcy. We are sending this statement to you for informational and compliance purposes only. It is not an attempt to collect a debt against you.

If your bankruptcy plan requires you to send your regular monthly mortgage payments to the Trustee, you should pay the Trustee instead of us. Please contact your attorney or the Trustee if you have questions.

If you want to stop receiving statements, write to us.

### Explanation of Payment Amount (Post-Petition Payment)

| | |
|---|---|
| Principal | $511.63 |
| Interest | $1,053.31 |
| Escrow (Taxes and Insurance) | $375.00 |
| **Regular Monthly Payment** | **$1,939.94** |
| Total Fees and Charges | $190.00 |
| Past Unpaid Amount | $1,439.94 |
| **Total Payment Amount** | **$3,569.88** |

*The Payment Amount does not include any amount that was past due before you filed for bankruptcy.*

### Account Information

| | |
|---|---|
| Outstanding Principal | $269,126.91 |
| Interest Rate (Until October 2015) | 4.75% |
| Prepayment Penalty | Yes |

### Transaction Activity (7/20 to 8/19)

| Date | Description | Charges | Payments |
|---|---|---|---|
| 8/10/15 | Partial Payment Received* | | $336.43 |
| 8/13/15 | Partial Payment Received* | | $500.00 |
| 8/16/15 | Late Fee (charged because full payment not received by 8/15/15) | $190.00 | |

### Breakdown of Past Payments

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $3,926.91 |
| Interest | $0.00 | $8,592.62 |
| Escrow (Taxes and Insurance) | $0.00 | $3,000.00 |
| Fees | $0.00 | $0.00 |
| Partial Payment (Unapplied)* | $836.43 | $1,251.53 |
| **Total** | **$836.43** | **$16,771.06** |

### Important Messages

We have not received all of your mortgage payments due since you filed for bankruptcy.

This statement may not show recent payments you sent to the Trustee that the Trustee has not yet forwarded to us. Please contact your attorney or the Trustee if you have questions.

*Partial Payments:* Any partial payments listed here are not applied to your mortgage, but instead are held in one or more separate suspense accounts. Once we receive funds equal to a full monthly payment, we will apply those funds to your mortgage.

### Summary of Amounts Past Due Before Bankruptcy Filing (Pre-Petition Arrearage)

| Paid Last Month | $336.43 | This box shows amounts that were past due when you filed for bankruptcy. It may also include other allowed amounts on your mortgage loan. The Trustee is sending us the payments shown here. These are separate from your regular monthly mortgage payment. |
|---|---|---|
| Total Paid During Bankruptcy | $1,345.72 | |
| Current Balance | $10,765.88 | |

---

**Springside Mortgage**
Springside Mortgage
P.O. Box 11111
Los Angeles, CA 90010

If your bankruptcy plan requires you to send your regular monthly mortgage payments to the Trustee, do not send your payment to us. Instead, you should send your payment to the Trustee.

| Payment Amount | | |
|---|---|---|
| Payment Date: | | 9/1/2015 |
| Payment Amount: | | $3,569.88 |
| Additional Principal | $ | . |
| Additional Escrow | $ | . |
| **Total Amount Enclosed** | $ | . |

If you are sending us a payment, make your check payable to *Springside Mortgage*.

13